IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 8, 2011

## STATE OF TENNESSEE v. EMANUEL HAMILTON

**Appeal from the Davidson County Criminal Court**
**Nos. 2004-B-1778, 2007-B-1486   Cheryl A. Blackburn, Judge**

---

**No. M2010-00432-CCA-R3-CD - Filed May 25, 2011**

---

The Defendant, Emanuel Hamilton, appeals the Davidson County Criminal Court's order revoking his probation for possession with the intent to deliver one-half gram or more of cocaine, a Class B felony, and sale of less than one-half gram of cocaine, a Class C felony, and ordering the remainder of his effective eleven-year sentence to be served in confinement. He contends that he should have been returned to probation. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Michael Colavecchio, Nashville, Tennessee, for the appellant, Emanuel Hamilton.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia Lee, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Jeff Burks and Stacey Smith, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

In Davidson County Criminal Court Division III case 2004-B-1778, the Defendant pled guilty on February 3, 2005, to possession with the intent to deliver one-half gram or more of cocaine, occurring on March 9, 2004. See T.C.A. § 39-17-417(a)(4), (c)(1) (2010). He received an eight-year sentence to be served on probation. On July 13, 2005, he violated the terms of his probation, and he served thirty days in jail, and was returned to probation. He again violated the terms of his probation, and on April 11, 2007, he was ordered to serve the sentence and was released after serving part of his sentence in a boot camp program.

In Division I case 2007-B-1486, the Defendant pled guilty on January 4, 2008, to sale of less than one-half gram of cocaine, occurring on January 31, 2007. See T.C.A. § 39-17-417(a)(3), (c)(2). He received a three-year sentence to be served consecutively to the sentence in case 2004-B-1778. After he was released from the boot camp program, he was arrested on July 11, 2009, for aggravated criminal trespass. He was sentenced to serve nine days for the offense. The arrest took place at 3:46 a.m., past the Defendant's 6:00 p.m. curfew.

The trial court signed a revocation warrant for both cases on July 17, 2009. The warrant signed by the Defendant's probation officer alleged violations of probation based upon the aggravated criminal trespass conviction and the curfew violation.

At the revocation hearing, the Defendant conceded through counsel that he was arrested, pled guilty, and was sentenced to nine days for the trespass conviction. Defense counsel acknowledged that the Defendant knew he was on a list that prohibited him from going back to the same public housing project where he was previously arrested. Through counsel, the Defendant conceded that he was out past his curfew. The only matter at issue at the hearing was whether the Defendant would serve his sentence or be allowed to remain on probation.

Juanita Shaw, the Defendant's probation officer, testified that the Defendant was released from boot camp in early June 2009 and that he reported to her weekly as required by his intensive probation program. She said he never brought her any proof that he sought employment. She said he called her around June 13, either from the jail or after he was released from the jail, and reported the trespassing arrest. She said that when the Defendant reported for his next probation appointment, she told him she would pursue a violation warrant.

Janikka Anderson, the Defendant's girlfriend of approximately ten months, testified that she was with the Defendant when he was arrested on July 11, 2009. She said she visited the Defendant at his mother's house on July 10 until 9:00 or 10:00 p.m., when she left with the Defendant's seven-year-old son. She said the boy wanted to spend the night with her children at her apartment. She said she lived on Metropolitan Development and Housing Authority (MDHA) property.

Ms. Anderson testified that the Defendant's son became ill with a high fever at her house, that she returned to the Defendant's mother's house to get the Defendant, and that she went with the two of them to the emergency room. She said the Defendant accompanied her to the hospital because a parent had to be present for the child to receive treatment.

2

Ms. Anderson testified that they left the emergency room in the early morning hours of July 11 and that she went to her house, which was between the hospital and the Defendant's mother's house, to drop off the child first. She said a uniformed police officer was parked on the corner in a patrol car. She said that they were close enough for the officer to see them but that he did not immediately approach them. She said that the Defendant had to go to her back door because the front door was locked and that by the time she walked to the back of the building, the officer had approached the Defendant at her back door. She said that the officer asked her if she was "vouching for" the Defendant and that she told the officer she lived there and the Defendant was her guest. She said that the Defendant provided his identification to the officer as requested and that after the officer verified that the Defendant did not have any outstanding warrants, the officer arrested him because he was on the MDHA's "banned list." She said that she had only lived on MDHA property for a few months and that she had never heard of the banned list. She said she and the Defendant were unaware he was on the list.

Ms. Anderson identified the Defendant's certificate for completing a job readiness class. She said she took the Defendant to and from the class, which met weekly. She said the Defendant took forklift driving classes and that the agency sponsoring the job readiness program was going to pay for classes and the $100 fee for the Defendant to obtain a forklift operator's license.

The trial court expressed its desire to hear the testimony of the arresting officer. The court continued the hearing in order for the arresting officer to be subpoenaed. At a later hearing, Metro Police Officer Mike Buchanan testified that he was in the MDHA's Edgehill housing project in the early morning hours of July 11, 2009. He said that another officer approached the Defendant and that he came as back-up. He said the Defendant told them he did not live on the property. Officer Buchanan said that he asked the Defendant why he was on the premises and that the Defendant responded by explaining that his girlfriend lived there. He said the Defendant never mentioned an emergency.

On cross-examination, Officer Buchanan identified the officer who made initial contact with the Defendant as Officer Howard or Officer Lures. He said he did not see a child anywhere. He said that when he encountered the Defendant, the Defendant was standing beside a patrol car. He said he was unaware of another car associated with the Defendant on the property.

Officer Buchanan testified that a person would be placed on the banned list after being involved in criminal activity and being asked to stay off the property. He said he did not know why the Defendant was on the list. He said that the police department maintained the list and that officers received an updated list periodically.

3

The defense requested additional time to subpoena the officer who first talked to the Defendant. The court granted the request. At a later hearing, Officer Darryl Howard testified that he was on duty on July 11, 2009, when he encountered the Defendant at MDHA's Edgehill property. He said the police were sweeping MDHA properties for trespassers and curfew violations that evening. He said there was a high level of drug trafficking in the area. He said they checked anyone who stood on a porch or on the grass. He said that it was "tough" to be placed on the banned list and that anyone they identified during the sweeps as being on the list was taken to jail for trespassing.

Officer Howard testified that he saw the Defendant loitering on a grassy spot around a porch. He could not recall specifically where he saw the Defendant. He said the procedure that evening was to approach an individual, request the person's identification, and compare the identification to the banned list. He said the Defendant was on the banned list.

On cross-examination, Officer Howard testified that the Defendant was not near a car with a young child inside. He said he did not recall the Defendant mentioning that he had been to the hospital with a child and was only there to take the child's mother home. He said that the officers tried to build a rapport with the residents and that had the Defendant mentioned a child or a medical emergency, the officers would have dealt with the situation rather than arresting the Defendant. He said that the Defendant was not in a car and that this was not a situation where the Defendant pulled up in a car to drop someone off and kept moving. He said the Defendant was alone when he approached him. He said someone else might have come outside once they made contact with the Defendant.

The Defendant did not testify. Defense counsel argued that the Defendant's three-month confinement since his arrest for the violation warrant was a sufficient punishment and that the Defendant should be returned to probation. The trial court accredited the officers' testimony that the Defendant never mentioned a child or a medical emergency. The court found that the State established by a preponderance of the evidence that the Defendant violated his probation by committing a new offense and being out past his curfew. Based upon the Defendant's past failures to abide by the terms of probation and his history of additional criminal activity while on probation, the court found that the Defendant's sentence should be placed into effect.

On appeal, the Defendant argues that the trial court erred in revoking his probation. The State argues that the trial court did not abuse its discretion. We agree with the State.

A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2010). "In probation revocation hearings, the credibility of witnesses is to be determined

4

by the trial judge." State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991) (citing Carver v. State, 570 S.W.2d 872 (Tenn. Crim. App. 1978)). If a trial court revokes a defendant's probation, its options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's probation by up to two years. T.C.A. §§ 40-35-308(a), (c); -310 (2010); see State v. Hunter, 1 S.W.3d 643, 648 (Tenn. 1999). The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless it appears that there has been an abuse of discretion. See State v. Williamson, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981).

The Defendant acknowledges that he was convicted of especially aggravated trespassing. He maintains, however, that he should be given another opportunity on probation. The record contains sufficient proof that the Defendant violated the conditions of his probation by being out past his 6:00 p.m. curfew and trespassing on MDHA property after he was prohibited from returning. Although the Defendant's girlfriend testified that the Defendant was only on MDHA property due to his child's medical emergency, Officers Howard and Buchanan testified that the Defendant mentioned nothing about a child's medical emergency. Instead, the Defendant mentioned only that his girlfriend lived on the premises. Officer Howard said that the Defendant was loitering outside, that he was not near a car containing a child, and that no one was with the Defendant when he approached him. Officer Howard said that had the Defendant mentioned a medical emergency, they would have dealt with the situation and would not have arrested the Defendant. These facts and the Defendant's failures at past probation opportunities were sufficient proof to support the court's finding that the Defendant violated his probation and revoking his probation.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE